UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOEL D. RADER and VINCENT SEALY                                            PLAINTIFFS

VS.                                                    CIVIL ACTION NO. 4:10cv95-DPJ-FKB

HERBERT C. BRUISTER, AMY O. SMITH,
JONDA HENRY, ROBERT EDDY, and
BRUISTER FAMILY LLC                                                         DEFENDANTS

and

SOUTHEASTERN VENTURES, INC., fka
BRUISTER & ASSOCIATES, INC.;
BRUISTER & ASSOCIATES, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
AND TRUST; BRUISTER & ASSOCIATES,
INC. ELIGIBLE INDIVIDUAL ACCOUNT PLAN                       NOMINAL DEFENDANTS

ORDER

This ERISA case is before the Court on a number of pending motions:  (1) Plaintiffs'

Motion to Exclude Expert Lorenzo Heart [427]; (2) Plaintiffs' Motion for Partial Summary

Judgment [429]; (3) Plaintiffs' *Daubert* Motion to Exclude Expert Report and Testimony of

Defense Expert Jared Kaplan [436]; (4) Defendants' Motion to Exclude Z. Christopher Mercer,

Plaintiffs' Expert Witness, from Testifying with Respect to Opinions Regarding the Standard of

Care for an ERISA Fiduciary and from Providing a Corresponding Expert Report in this Respect

[445]; (5) Defendants' Motion for Summary Judgment on the Basis of Statutes of Limitations

[448]; and (6) Defendants' Motion for Summary Judgment [450].  The Court finds that the

motions should all be denied without prejudice to the parties raising some of the issues at trial as

set forth herein.

I.      Facts and Procedural History

In a three-year period, Defendant Herbert C. Bruister sold 100% of the shares of Bruister and Associates ("BA") stock to BA's employees through an Employee Stock Ownership Plan ("ESOP") governed by ERISA.[1]  The transfer was completed through five separate transactions, the last three of which are now disputed.[2]  Generally speaking, Plaintiffs Joel D. Radar and Vincent Sealy, both plan beneficiaries, assert that Defendants violated ERISA by approving the stock purchases.

Each purchase of BA Stock on behalf of the ESOP was made through an Employee Stock Ownership Trust ("ESOT").  Bruister and Amy Smith—as BA's directors—appointed themselves and initially Michael Bruce as trustees for the ESOT.  Jonda Henry later replaced Bruce.  Though Bruister was a trustee of the ESOT that purchased the stock from himself and his LLC, the parties dispute whether Bruister acted in a fiduciary capacity when the trustees authorized the purchases.

In all five transactions, the ERISA fiduciaries relied upon valuations prepared by Matthew Donnelly to assess the stock's sale price.  Plaintiffs assert that Defendants did not adequately investigate Donnelly's qualifications before hiring him to value the company, supplied Donnelly with incomplete or inaccurate financial information, and were not reasonably

---

[1] BA subsequently became known by another name intermittently referenced in the filings: Southeastern Ventures, Inc.  Bruister Decl. [431-3] ¶ 2.  Herbert Bruister originally held all of BA's outstanding stock, but transferred it Bruister Family LLC ("BFLLC"), in which Bruister and his wife are the sole members and managers, prior to the commencement of these transactions.

[2] Pls.' Second Am. Compl. [343] ¶ 65.

justified in relying on Donnelly's valuations.  They contend that the sales prices for the transactions were inflated.

Based on these generically described facts, Plaintiffs claim Defendants violated the following ERISA-created duties:  the duty of loyalty (Herbert Bruister), the duty of prudence in the value paid for BA shares (Bruister, Amy Smith, and Jonda Henry), the duty owed by nature of being co-fiduciaries (Bruister, Smith, and Henry), and the duty of BA's Board of Directors to monitor the fiduciaries (Bruister and Smith).  Plaintiffs also claim that Defendants (Bruister, Smith, and Henry) engaged in transactions with a party-in-interest without ensuring the ESOP paid no more than "adequate consideration".  *See* Pls.' Second Am. Compl. [343] at 21–27.  In addition to seeking relief for these breaches from the fiduciaries, Plaintiffs also seek "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), on behalf of the ESOP as a whole from the non-fiduciary, BFLLC, and Bruister—to the extent Bruister was not acting as a fiduciary.  The case is now before the Court on a variety of dispositive and non-dispositive motions.  The Court has personal and subject-matter jurisdiction.

II.    Analysis

A.    Motions for Summary Judgment

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

3

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

"Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  In the present case, the Court has concluded genuine issues of material fact exist that will require a trial on the merits of at least some of the claims.  Other factual and legal issues present close calls under Rule 56, but because a bench trial seems unavoidable, it is more prudent to carry those issues to trial.  This is especially so given the more than 300 pages of briefing on the summary-judgment issues alone and nearly 5,000 pages of

supporting record evidence.  While the Court has endeavored to digest the issues and the record, it will be in a better position to rule after trial.

        1.       Procedural Issues

                a.       Statute of Limitations

                        (1)       Which Statute Applies

Defendants argue that all claims are barred by the applicable statute of limitations. Before addressing that issue, the Court must determine whether the Mississippi or federal statute applies.  The answer is not disputed as to Counts I–III of the Amended Complaint, which are governed by ERISA's three-year statute of limitations found in § 413.[3]  The only real dispute is whether Plaintiffs' claim against Bruister and BFLLC in Count IV should borrow Mississippi's general three-year statute of limitations found in Mississippi Code section 15-1-49.

---

[3]ERISA § 413 provides

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

    . . .

    (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

To begin with, it is not entirely clear what Count IV intends.  Defendants describe the count as asserting a claim for equitable relief pursuant to § 502(a)(3)[4] "against Defendant Bruister (in a non-ERISA fiduciary party in interest capacity) and BFLLC, a non-ERISA fiduciary party in interest."  Defs.' Mem. [449] at 15.  They then argue that § 502(a)(3) claims arise under ERISA part 5 and therefore fall outside the scope of § 413 which applies to part 4. *Id.* at 16.

Plaintiffs dispute Defendants' description of this claim, noting that they also invoke the "catch-all" provision of ERISA § 409(a), 29 U.S.C. § 1109(a), which is in part 4.  Pls.' Resp. [460] at 11–12 (citing Pls.' Second Am. Compl. [343] at 110).  But Plaintiffs never specifically address Defendants' assertion that Count IV is brought against Bruister and BFLCC as non-fiduciaries, an assertion that goes to the core of Defendants' argument.

To the extent Count IV is addressed to Bruister in his fiduciary capacity, the claims brought under § 502(a)(3) fall under § 413's limitations period.  *See Radford v. General Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998) (concluding that claims for equitable relief

---

[4]Section 502(a)(3) states:

Persons empowered to bring a civil action

A civil action may be brought--

. . .

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

against a fiduciary under § 502(a)(3) are governed by § 413). As for BFLLC—and any non-fiduciary claims against Bruister—they are not covered by § 409(a). That section is expressly limited to acts by a fiduciary. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 246–47 (2000) (explaining that § 409(a), 29 U.S.C. § 1109(a), is limited to claims against fiduciaries). But that does not foreclose the possibility that the limitations period provided in § 413 may still apply to equitable relief against a non-fiduciary under § 502(a)(3).

Whether § 413 applies to equitable relief against a non-fiduciary party in interest under § 502 is not firmly established. In *Reich v. Lancaster*, the Fifth Circuit applied § 413 to claims under § 502(a)(5) against a nonfiduciary found to have engaged in a prohibited transaction under § 406. 55 F.3d 1034, 1043, 1054–55 (5th Cir. 1995). But the state-verses-federal question was not examined. The same thing happened in *Landwehr v. DuPree*, where the Ninth Circuit, again without discussion, applied § 413 to a § 502 claim for "other appropriate equitable relief" arising out of a fiduciary breach. 413 72 F.3d 726, 731–32 (9th Cir. 1995) (applying the statute of limitations in ERISA § 413)*. But see Campanella v. Mason Tenders' Dist. Council Pension Plan*, 132 F. App'x 855, 856 (2d Cir. 2005) ("ERISA § 413 applies only to breach of fiduciary duty claims."). Despite the somewhat thin authority, the Court concludes that § 413 does apply.

In *Harris Trust*, the Supreme Court concluded that "§ 502(a)(3) itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." 530 U.S. at 245. Defendants latch onto this language arguing that § 413 is limited to claims arising under ERISA part 4, and therefore excludes claims arising independently from § 502(a)(3), which is found in

7

part 5.  This argument is perhaps too easy and eventually loses steam when the *Harris Trust*

analysis is examined in light of the full text of §§ 413 and 502(a)(3).

Section 502(a)(3) describes who may sue and the available remedies.  It does not indicate

the parties against whom suit may be brought.  29 U.S.C. § 1132(a)(3).   Relevant here, it allows

plan participants, like Plaintiffs, to seek equitable remedies.  *Id*.  With respect to a claim against a

fiduciary, § 502(a)(3) would merely provide a remedy for violation of one of the substantive

sections, like § 406, which precludes certain transactions with parties in interest.  But no such

sections exist as to non-fiduciary parties in interest, leaving the Court in *Harris Trust* to ask

whether § 502(a)(3) itself created that cause of action.

The Supreme Court concluded that it did by construing § 502(a)(3) in light of § 502(l).[5]

The Court paraphrased § 502(l) as follows: "the Secretary shall assess a civil penalty against an

'other person' who 'knowing[ly] participat[es] in' 'any *violation of part 4* by a fiduciary.'"  530

U.S. at 248 (ellipses omitted) (emphasis added).  The Court then concluded, "The plain

implication is that the Secretary may bring a civil action under § 502(a)(5) against an 'other

---

[5]Section 502(l) provides in relevant part:

(1) In the case of—

   (A) any breach of fiduciary responsibility under (or other violation of) part
   4 of this subtitle by a fiduciary, or

   (B) any knowing participation in such a breach or violation by any other
   person,

the Secretary shall assess a civil penalty against such fiduciary or other person . . .
.

29 U.S.C. § 1132(l).

person' who 'knowing[ly] participat[es]' *in a fiduciary's violation*." *Id*. (emphasis added).

Having found this authority for the Secretary, the Supreme Court extended it to private litigants

entitled to bring suit under § 502(a)(3). *Id*. In sum, the equitable remedy provided in § 502(a)(3)

against a non-fiduciary arises when a fiduciary violates part 4. *Id*.

Looking then to § 413, it begins, "No action may be commenced under this subchapter

*with respect to* a fiduciary's breach of any responsibility, duty, or obligation under this part, *or*

*with respect to a violation of this part*, after the earlier of . . ." two specified periods. 29 U.S.C.

§ 1113 (emphasis added). This language amply covers equitable relief against a nonfiduciary

under § 502(a)(3). First, § 413 relates to claims "under this subchapter," *i.e*., Title II of ERISA,

which includes both parts 4 and 5. Second, nothing in § 413 limits it to claims against

fiduciaries. Had Congress wished to accomplish that goal, it could have simply stated, "no

action may be commenced under this subchapter *against a fiduciary*." Instead, § 413 by its plain

terms relates to claims "*with respect to*" a fiduciary's breach "*or with respect to a violation* of

this part." *Id*. (emphasis added). Equitable relief imposed against a non-fiduciary under

§ 502(a)(3) springs from knowing participation in "any *violation of part 4* by a fiduciary."

*Harris Trust*, 530 U.S. at 248 (quoting 29 U.S.C. § 1132(l)) (emphasis added). So a claim for

equitable relief against a non-fiduciary under § 502(a)(3) is "with respect to a violation of this

part [4]." 29 U.S.C. § 1113. And in this case, Plaintiffs seek equitable relief based on § 409 and

for breaches of §§ 404, 405, and 406. *See* Pls.' Second Am. Compl. [343] ¶¶ 112–13. Section

413 applies. *See Solis v. Couturier*, No. 2:08–cv–02732–RRB–GGH, 2009 WL 1748724, at *2

9

(E.D. Cal. June 19, 2009) (applying the statute of limitations in ERISA § 413 to a § 502 claim for "other appropriate equitable relief" arising out of a fiduciary breach).[6]

(2)    Application of § 413's Three-Year Limitations Period

The next question is whether Plaintiffs' claims are untimely because Plaintiffs filed suit more than three years after acquiring actual knowledge of breaches of fiduciary duties.  Under § 413(2), Plaintiffs were required to bring suit "three years after the earliest date on which [they] had actual knowledge of the breach or violation . . . ."  29 U.S.C. § 1113(2).  Unlike some other circuit courts, including the Seventh Circuit in the opinion Defendants cited, "actual knowledge" in the Fifth Circuit "'requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm.'"  *Reich*, 55 F.3d 1057 (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)); *see also Kling v. Fid. Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 136–37 (D. Mass. 2004) (noting the Fifth and Seventh Circuits, among others, are split).  This test further "'requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA.'"  *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995) (quoting *Int'l Union v. Murata Erie N. Am.*, 980 F.2d 889, 900 (3d Cir. 1992)); *see also Babcock v. Hartmary Corp.*, 182 F.3d 336, 339 (5th Cir. 1999).

---

[6]Both the federal and state statutes can in some circumstances be tolled, so the choice between § 413 and section 15-1-49 could be a distinction without a meaningful difference. Given its holding, the Court need not explore the matter further.

10

Defendants contend that Plaintiffs obtained this actual knowledge in March 2006, when the ESOP mailed a letter stating in part: "The ESOT has recently completed the purchase of 134,710.53 shares of Bruister capital stock from individual Bruister shareholders and now owns a total of 1,000,000 shares, which represents one hundred percent (100%) of the issued and outstanding shares of Bruister capital stock." Pass-Through Materials [499-1] at 2. According to Defendants, because § 406 prohibits transactions with a party-in-interest and the fiduciary bears the burden of showing any exemptions to § 406, Plaintiffs had actual knowledge of a claim.

While the March 2006 letter did inform Plaintiffs that the ESOP had purchased all of BA's outstanding shares, the issue is raised under Rule 56, and the Court concludes that the letter is not sufficient—at least as a matter of law—to establish actual knowledge under § 413. First, ERISA prohibits a plan from engaging in transactions with a party-in-interest, but a party-in-interest is not defined so broadly to include every shareholder of a company. *See* 29 U.S.C. § 1002(14). Second, Defendants fail to explain how knowledge that the ESOP purchased BA's outstanding shares is sufficient for the other claims that Defendants breached their duties of loyalty and prudence as well as duties by nature of their roles as co-fiduciaries and members of BA's board of directors. *See Maher*, 68 F.3d at 956 ("Inasmuch as appellants are challenging the actual selection of [an annuity provider], they must have been aware of the process utilized by [defendant] in order to have had actual knowledge of the resulting breach of fiduciary duty."). The statement in the March 2006 letter is inadequate to show—again as a matter of law—that Plaintiffs "actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation

11

under ERISA."  *Id.* at 954 (citation and quotations omitted).  The Court therefore finds that

Defendants' motion for summary judgment based on the statute of limitations should be denied.[7]

b.      Ability to Sue on Behalf of Plan

Defendants argue that neither Radar nor Sealy may bring this action as a "representative

action."  Defs.' Mem. [452] at 54.  ERISA § 502(a)(2) states:  "A civil action may be brought by

the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409

[29 U.S.C. § 1109]."  29 U.S.C. § 1132(a)(2).  Section 409 states, in relevant part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter
> shall be personally liable to make good *to such plan* any losses to the plan
> resulting from each such breach, and *to restore to such plan* any profits of such
> fiduciary which have been made through use of assets of the plan by the fiduciary,
> and shall be subject to such other equitable or remedial relief as the court may
> deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109 (emphasis added).  It has been traditionally held that § 502(a)(2) claims were

brought on behalf of the plan as a whole.  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140

(1985).  But in *LaRue v. DeWolff, Boberg & Assoc.*, the Court explained that *Russell* was decided

in light of a defined benefits plan.  552 U.S. 248, 255 (2008).  In the defined-contribution-plan

context, the Court held that a participant proceeding under § 502(a)(2) could "recover[] for

fiduciary breaches that impair the value of plan assets in a participant's individual account."  *Id*.

at 256.

---

[7]Defendants challenge the veracity of Plaintiffs' affidavits, in which they testify they did
not acquire actual knowledge of their claims until *after* they had filed suit.  Defs.' Resp. [476] at
3–4.  Such inconsistencies may affect credibility, but credibility is not addressed at the Rule 56
stage.

12

Defendants agree that *LaRue* would have allowed Radar and Sealy to seek individual relief in their Amended Complaint—had they so elected.  But they protest Plaintiffs' attempt to obtain recovery "on behalf of the ESOP as a whole."  Pls.' Am. Compl. [105] ¶10.  According to Defendants, after *LaRue*, participants in a defined-contribution plan may seek relief only for losses to their individual accounts.  *See* Defs.' Mem. [452] at 55 (citing *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 266 (D. Mass. 2008)).  But this Court agrees with others that "[*LaRue*] broadens, rather than limits, the relief available under § 502(a)(2) . . . .  [The] contention that *LaRue* establishes that there are no 'plan claims' in the defined contribution context is incorrect." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009); *see also LaRue*, 552 U.S. at 262–63 (Thomas, J., concurring) ("[W]hen a participant sustains losses to his individual account as a result of a fiduciary breach, the plan's aggregate assets are likewise diminished by the same amount, and § 502(a)(2) permits that participant to recover such losses on behalf of the plan."); *Cook v. Campbell*, No. 2:01cv1245-ID, 2008 WL 2039501, at *4 (M.D. Ala. May 12, 2008).

In the alternative, Defendants argue that Plaintiffs cannot proceed on behalf of the plan because neither Radar nor Sealy took steps to serve in a representative capacity—like joining affected participants or certifying a class.  While the plain text of the statute allows a participant to pursue a claim on behalf of the plan, the procedures for a representative claim are not explained.  The Second Circuit Court of Appeals considered the issue in *Coan v. Kaufman*, holding that a participant must "take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of the plan.'" 457 F.3d 250, 261 (2d Cir. 2006) (quoting *Russell*, 473 U.S. at 142 n.9).  The court then affirmed summary judgment, holding:

13

> Because Coan has not taken any steps to permit the court to safeguard the interests
> of others or the court's proceedings under the circumstances, . . . she has failed to
> represent adequately the interest of other plan participants and has therefore not
> properly proceeded in a representative capacity as required by section 502(a)(2).

*Id.* at 262.

*Coan* has received varying treatment both pre- and post-*LaRue*.  *Compare Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2010 WL 547172, at *4 (S.D. Ill. Feb. 10, 2010) (refusing to permit case to proceed absent procedural safeguards because of "antagonistic and irreconcilable" interests and a concern for redundant suits), *and Fish v. Greatbanc Trust Co.*, 667 F. Supp. 2d 949, 952 (N.D. Ill. 2009) (holding on motion to proceed without class certification that *some* procedural safeguards were required), *with Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 973–74 (E.D. Mo. 2010) (reasoning participants adequately represented plan by naming multiple plaintiffs, those plaintiffs conceded they could only recover for the plan, and preclusion issues were not presently before the court), *In re AEP ERISA Litig.*, C2-03-67, 2009 WL 3854943 (S.D. Ohio Nov. 17, 2009) (noting participant sought but was denied class certification), *and Waldron v. Dugan*, No. 07 C 286, 2007 WL 4365358, at *6–7 (N.D. Ill. Dec. 13, 2007) (declining to impose class- or derivative-action requirement on § 502(a)(2)).

The present case adds another wrinkle because the Secretary of Labor filed a parallel suit that protects the interests of the plan as a whole and of its participants.  The Secretary's suit will be reconsolidated with Radar and Sealy's case and seeks the same relief for the plan from the same defendants regarding the same transactions.  So the interests of others will be safeguarded. That said, Radar and Sealy's suit injects the possibility of attorneys' fees if they prevail.  Given the lack of helpful guidance, the protection afforded by the Secretary's suit, and the fact that the

14

fees issue will come into play only upon success on the merits, the Court concludes that the

impact of the steps Radar and Sealey did or did not take to represent the class is better decided

after a trial on the merits.

        2.      Liability Under ERISA

Stated succinctly, Plaintiffs assert that Defendants breached their fiduciary duties to the

ESOP by overpaying for BA's closely-held stock in the Subject Transactions.  Pls.' Second Am.

Compl. [343].  As necessary elements of their claims, Plaintiffs "must prove a breach of a

fiduciary duty and a prima facie case of loss to the plan."  *In re Dynegy, Inc. Erisa Litig.*, 309 F.

Supp. 2d 861, 872 (S.D. Tex. 2004).  "'Once the plaintiff has satisfied these burdens, the burden

of persuasion shifts to the fiduciary to prove that the loss was not caused by . . . the breach of

duty."  *Id.* (quoting *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir.

1995)).  ERISA § 409 imposes *liability* on "[a]ny person who is a fiduciary with respect to a plan

who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

subchapter . . . ."  29 U.S.C. § 1109.  Thus, a threshold question in this case is which Defendants

were fiduciaries.[8]

        a.      Who is a Fiduciary

It is undisputed that Smith and Henry were fiduciaries for purposes of Plaintiffs' claims.

It also appears undisputed that Bruister and Smith, in their capacity as members of the BA board

of directors, were fiduciaries for the limited purpose of monitoring and/or removing ESOP

---

[8]The Court notes that whether the ESOP suffered a loss is distinct from whether fiduciary
duties were breached.  The loss question goes to damages, not liability.  *LaScala v. Scrufari*, 479
F.3d 213, 221 (2d Cir. 2007) ("The fact that the Funds may not have suffered any loss as a result
of Russell's salary increases may bear on the question of damages, but has no bearing on whether
Scrufari breached his fiduciary duties in the first place." (footnote omitted)).

fiduciaries. *See infra*, at section 2(c)(1).  But the parties dispute whether Bruister was a

fiduciary, and thus whether he is subject to liability, for the Subject Transactions.

Section 1002 of Title 29 defines several terms under ERISA and states:

[A] person is a fiduciary with respect to a plan to the extent (I) he exercises any
discretionary authority or discretionary control respecting management of such
plan or exercises any authority or control respecting management or disposition of
its assets, (ii) he renders investment advice . . . , or (iii) he has any discretionary
authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  And in Part 4, which addresses fiduciary responsibility, ERISA

requires that each plan "provide for one or more *named fiduciaries* who jointly or severally shall

have authority to control and manage the operation and administration of the plan."  29 U.S.C.

§ 1102(a)(1).  A *named fiduciary* is "a fiduciary who is named in the plan instrument, or who,

pursuant to a procedure specified in the plan, is identified as a fiduciary . . . ."  *Id.* § 1102(a)(2).

Rader and Sealey assert that because Bruister was named as a fiduciary and trustee in the

plan documents, then he is exposed to fiduciary liability.  *See, e.g.*, ESOP Plan Documents [453-

4] at 11, 40 (establishing ESOT and stating that the "Trustees shall be the named fiduciaries

. . ."); ESOT Agreement [453-3] at 1 (naming Bruister as a trustee).  Defendants counter that

Bruister faces no fiduciary liability because—according to them—he abstained from all relevant

decisions and documented that abstention.  *E.g.*, 2004 SPA [453-15] at 15 ("Bruister refrained

from taking any action as a member of the ESOT's Board of Trustees with respect to this 2004

ESOP [SPA] . . . ."); Sept. 2005 Trustee Resolution [455-4] at 2 (essentially the same).

Both approaches appear too rigid.  Instead, the Court applies the so called "two-hats"

doctrine, "which acknowledges that the employer is subject to fiduciary duties under ERISA only

'to the extent' that it performs three specific functions identified by Congress" in § 1002(21)(A).

16

*Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 412 (5th Cir. 2003) (citation omitted).  And as stated above, that section classifies one as a fiduciary only to the extent he *exercises* certain authority or control over plan management or assets; *renders* investment advice; or *possesses* discretionary authority or responsibility in plan administration.  29 U.S.C. § 1002(21)(A).  Thus,

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1459–60 (5th Cir. 1986).

So neither being named as a fiduciary nor recording an abstention finally answers the question under § 1002(21)(A).  The question is more nuanced and includes whether Bruister "exercise[d] any authority or control respecting management or disposition of [the plan's] assets." § 1002(21)(A); *see Schloegel v. Boswell*, 994 F.2d 266, 271–72 (5th Cir. 1993) ("To satisfy the 'authority or control' element under subsection (I), the Plaintiffs must demonstrate that [an advisor] caused [the trustee] to relinquish his independent discretion in investing the plan's funds and follow the course prescribed by [the advisor]." (citing *Sommers*, 793 F.2d at 1460)); *see also Pegram*, 530 U.S. at 226; *Hatteburg v. Red Adair Co. Inc. Employees' Profit Sharing Plan & Its Related Trust*, 79 F. App'x 709, 716 (5th Cir. 2003) (indicating conduct more important than titles for determining fiduciary status); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 418 (5th Cir. 1990) ("Thus, it will be the task of the court on remand to determine precisely the extent, as a factual matter, of *actual* fiduciary authority *possessed* or *exercised* by ALPA, Huttinger, and TACA with respect to the wrongs alleged by the pilots.").

17

Looking then to the facts, the Court cannot say as a matter of law whether Bruister acted as a fiduciary.  Defendants present record evidence that Bruister abstained, and there is testimony corroborating those documented representations of abstention.[9]  But there is also testimony in the record that suggests Bruister participated in the decision-making process despite technically abstaining from voting on the Subject Transactions.[10]  Because of this fact question, Plaintiffs' Motion for Partial Summary Judgment is denied in part with respect to the § 1104 claims against Bruister.  Likewise, Defendants are not entitled to summary judgment on the question of whether Bruister was acting as a fiduciary.

                    b.       Direct-Liability Claims

Plaintiffs assert direct-liability claims under ERISA § 404, which imposes liability for breaches of duties of prudence and loyalty, and § 406, which prohibits fiduciaries from authorizing certain transactions.

_____

[9] *See, e.g.*, Bruister 2011 Solis Dep. [453-1] at 83–84 ("I personally did not get involved in that because I was the seller, so anything related to movement of money or valuation or anything related to ESOP, I always abstained from any involvement with that."); Smith Nov. 2011 Dep. [453-9] at 106 (agreeing that Bruister abstained from "each and every transaction voted on"); Henry Apr. 2011 Dep. [469-9] at 140 (stating that with respect to the transactions Bruister always abstained); *see also* Henry Oct. 2011 Dep. [453-12] at 36 (similar); Campbell 2011 Dep. [454-5] at 193 ("I never saw [Bruister] acting as a trustee.").

[10] *See, e.g.*, Bruister 2009 Admin. Dep. [434] at 99 ("I'm not sure if abstaining is the proper word.  Abstain seems to imply to me that you had absolutely no input, . . . abstain is like you walked out of the room.  I never walked out of the room . . . .  What I was saying to the other trustees is because of my position as the seller, that I think . . . this decision should be more highly weighted by your input than possibly mine.  That doesn't mean that I might not give you my opinion."); *id.* at 120 ("There'd be a vote and we'd all say okay."); Henry 2009 Dep. [469-8] at 22 ("Herb was never part of those [conference calls with Campbell].  He kind of distanced himself from the transaction and let us mainly deal with him on that."); Henry 2009 Dep. [432-1] at 39 (stating that the three trustees were present at the discussions and "when the three of us were together we talked, we said looks good, you know"); Henry 2009 Dep. [432-1] at 62 (stating that Henry, Smith, and Bruister all discussed a change in some valuation method).

(1)     Breach of Fiduciary Duties, ERISA § 404

Plaintiffs claim that Defendants breached their duties of prudence by engaging in the

Subject Transactions for more than fair market value and that Bruister also breached his duty of

loyalty.  ERISA § 404 contains that statute's prudent-man standard and provides in part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest
> of the participants and beneficiaries and—
>
>> (A) for the exclusive purpose of:
>>
>>> (I) providing benefits to participants and their
>>> beneficiaries; and
>>>
>>> (ii) defraying reasonable expenses of administering
>>> the plan;
>>
>> (B) with the care, skill, prudence, and diligence under the
>> circumstances then prevailing that a prudent man acting in a like
>> capacity and familiar with such matters would use in the conduct
>> of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a); *see Kopp v. Klein*, 722 F.3d 327, 336 (5th Cir. 2013) (discussing duties of

prudence and loyalty in ESOP context).

Starting with the loyalty claim against Bruister, Defendants assert that he was not a

fiduciary.  Whether he was a fiduciary is a question of fact precluding summary judgment on this

issue.[11]  As to the prudence claim, the Court must first resolve a threshold dispute over the proper

standard of review and whether a "presumption of prudence" applies.

---

[11]Bruister's position on both sides of the transaction is not inherently impermissible, but
he must have acted for the exclusive purpose of the plan beneficiaries.  *Cf. Smith v. Sydnor*, 98-
CV-241, 2000 WL 33687953, at *16 (E.D. Va. Aug. 25, 2000) ("[T]he fact that a plan fiduciary
may also benefit from a transaction involving plan assets does not constitute a violation of the
fiduciary's duties under ERISA so long as the action was taken prudently and in the best interest
of plan participants and beneficiaries." (citing *Donovan v. Bierwirth*, 680 F.2d 263, 267 (2d Cir.
1982))).

(a)      *Moench* Presumption

Defendants argue that the so-called *Moench* presumption applies to the claims under

§ 404.  *Moench v. Robertson*, 62 F.3d 553, 569–71 (3d Cir. 1995).  Under *Moench*, "a fiduciary

of [an ESOP or EIAP] is entitled to a presumption that his decision to invest in the employer's

securities was prudent."  *Kirschbaum v. Reliant Energy Inc.*, 526 F.3d 243, 254 (5th Cir. 2008)

(adopting *Moench*).  Though this language may seem superficially relevant, the *Moench*

presumption was adopted to address a set of specific problems not present in this case.

The ESOP in *Moench* required the trustee to "invest all contributions received under the

terms of the plan . . . in ESOP stock."  62 F.3d at 558.  And, as *Moench* observed, ERISA reflects

Congressional preference for investment in ESOPs.  *Id.*  Yet trustees still have a duty of

prudence, and circumstances may exist where the employer's stock is such a bad investment that

a prudent man would divest and/or diversify.  *See Kirschbaum*, 526 F.3d at 253.   "The question

is how to define when the duty of prudence might require a fiduciary to disobey the clear

requirements of an EIAP [or ESOP] and halt the purchase of employer stock."  *Id.*

In *Moench*, the Third Circuit attempted "to strike the proper balance" between these

conflicting policies by adopting "an abuse of discretion standard of review for a fiduciary of an

. . . ESOP . . . that is designed to invest primarily in an employer's stock."  *Id.* at 254 (citing

*Moench*, 62 F.3d at 571).  "The *Moench* court held that because ESOP fiduciaries, unlike other

fiduciaries, are presumptively required to invest in employer securities, their decision to invest in

those securities should not be reviewed de novo, like the decision to invest in other securities.

Instead, the court held the decision to invest in employer securities should be reviewed for abuse

of discretion."  *Kopp*, 722 F.3d at 336 (internal citations to *Moench* omitted).  The Fifth Circuit

20

adopted this presumption in *Kirschbaum*, noting that without it, ERISA's "statutory preference for ESOPs" would be jeopardized.  526 F.3d at 254 (citing *Moench*, 62 F.3d at 570).

The present case avoids the dichotomy *Moench* remedied.  The presumptively prudent fiduciary act that *Moench* protects is the "decision to invest in employer securities" when some other investment decision—like divestment or diversification—might otherwise be prudent. *Kirschbaum*, 526 F.3d at 254.  No such dispute exists here because the claims do not involve the "decision to invest" in BA stock.  *Id*.  The issue is instead whether the plan paid too much.  And there is no policy conflict related to the alleged purchase of employer stock at inflated prices.[12]

Neither *Moench* nor the cases Defendants cite apply the prudence presumption to claims like those presented in this case.  Yet before and after *Moench*, the Fifth Circuit has applied a consistent standard for such claims.  *See Bussian*, 223 F.3d at 299; *Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983); *see also DeFazio v. Hollister, Inc.*, 854 F. Supp. 2d 770, 791–92 (E.D. Cal. 2012) (refusing to apply *Moench*).  Absent authority applying *Moench* in this context, the prudence presumption will not be applied to Plaintiffs' claims under ERISA § 404. The matter will be evaluated under the standards announced in *Cunningham*.[13]

---

[12]*Kirschbaum* rejected the argument that *Moench* does "not apply at all where allegations, like [the plaintiff's], relate to the fiduciaries' knowing purchases of stock at an artificially inflated price."  526 F.3d at 254.  Though Defendants cite this language, the price inflation issue in *Kirschbaum* was directly linked to diversification because the plaintiffs believed the fiduciaries breached their duties by failing to diversify when they knew the company's publically traded stock was artificially inflated.  *Id*.  That link to the "decision to invest" was apparent from the court's conclusion regarding that argument:  "*Moench* presumption logically applies to any allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock." *Id*.  Again, the issue was whether to invest in employer stock.

[13]Even if *Moench* applied, the Court would not grant summary judgment to Defendants because a question would remain whether the presumption was rebutted.  *See Kopp*, 722 F.3d at 339 (observing Fifth Circuit rebuttal test "requiring plaintiffs to show that the defendants knew

21

(b)      Breach of Duty of Prudence

ERISA requires that "a fiduciary discharge his duties with respect to a plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."  29 U.S.C. § 1104(a).  Under this standard,

> courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions.  [ERISA's] test of prudence . . . is one of conduct, and not a test of the result of performance of the investment.  The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed.  Thus, the appropriate inquiry is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.

*Bussian*, 223 F.3d at 299 (quoting *Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 317 (5th Cir. 1999)).  This is an objective standard, and a fiduciary's subjective good faith "is not a defense to a claim of imprudence."  *In re Dynegy*, 309 F. Supp. 2d at 875 (citing *Reich*, 55 F.3d at 1046; *Cunningham*, 716 F.2d at 1467).

The parties appear to agree that the prudence question turns on the fiduciaries' decision to rely on their valuation expert, Donnelly, to establish the fair market values for the subject transactions.  A fiduciary is entitled to obtain advice from experts and rely on that advice to make fiduciary decisions.  *Bussian*, 223 F.3d at 300–01 (citing *Cunningham*, 716 F.2d at 1474).  But "fiduciaries may not . . . rely blindly on that advice."  *Id.*; *see Cunningham*, 716 F.2d at 1474

---

or should have known the viability of the company was threatened or the employer's stock was in danger of becoming worthless to rebut the presumption of prudence"); *see also Moench*, 62 F.3d at 572 (observing that "if the fiduciary cannot show that he or she impartially investigated the options, courts should be willing to find an abuse of discretion").

("An independent appraisal is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled.  It is a tool and, like all tools, is useful only if used properly.").  "In order to rely on an expert's advice, a 'fiduciary must (1) investigate the expert's qualifications, (2) provide the expert with complete and accurate information, and (3) make certain that reliance on the expert's advice is reasonably justified under the circumstances." *Bussian*, 223 F.3d at 301 (quoting *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996)); *see Cunningham*, 716 F.2d at 1467, 1474, *cited with approval in Howard*, 100 F.3d at 1489; *see also Chao v. Hall Holding Co.*, 285 F.3d 415, 430 (6th Cir. 2002) (applying same test).

The question at this stage—under Rule 56—is not whether the three prongs have been factually established but whether they have been established as a matter of law.  As to some of these issues, there appears to be a question of fact.  Others present a close call even under Rule 56.  The Court concludes, therefore, that these issues should be tried.  *Firman*, 684 F.3d at 538 (noting well-established authority to deny summary judgment when "the better course would be to proceed to a full trial").  While the Court has spent considerable time marshaling the submissions and considering the issues, there is concern that something may have been overlooked or missed.  The case will proceed to trial on other issues anyway, so it seems more prudent to carry these issues forward and allow the parties a full opportunity to argue their positions and highlight their relevant evidence.

(2)    Section 406 Prohibited Transactions

In addition to the fiduciary duties found in § 404(a), ERISA also prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such

23

transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property

between the plan and a party in interest . . . ."  29 U.S.C. § 1106(a)(1).  But a transaction will be

exempt from this prohibition if the plan is an eligible plan, no commission is charged in the

transaction, and the transaction is for adequate consideration.  *See* 29 U.S.C. § 1108(e).

(a)      Party in Interest

ERISA defines a party in interest, in relevant part, as "any fiduciary;" "an owner, direct or

indirect, of 50 percent or more of . . . the combined voting power . . . or the total value of shares

. . . of a corporation" whose employees are covered by the plan; or "a corporation, partnership,

trust or estate of which (or in which) 50 percent or more of . . . the combined voting power . . . is

owned directly or indirectly, or held by" a fiduciary.  29 U.S.C. § 1002(14).

It is undisputed that the December 2004 transaction was a prohibited transaction because

BFLLC at the time held 50% or more of BA's outstanding stock.  29 U.S.C. § 1002(14)(E)(I).  It

is likewise undisputed that BFLLC became a minority shareholder for the remaining two

transactions and was no longer a party in interest under § 1002(14)(E)(I).  Plaintiffs principally

assert that the remaining two transactions were prohibited because Bruister, who held a 50%

stake in BFLLC, was acting as a fiduciary in the Subject Transactions—a point Defendants

dispute.  Because a question of fact exists as to Bruister's fiduciary status, Defendants' request

for summary judgment that the September and December 2005 transactions were not prohibited

is denied without prejudice.[14]

---

[14]Plaintiffs raise two additional arguments why the latter two transactions were
prohibited:  (1) the transactions constitute an indirect sale to a party in interest, and (2) the
transactions amount to transfers for the benefit of a party in interest.  Pls.' Mem. [467] at 433–46;
*see Neil*, 677 F. Supp. 2d at 1027 (noting circumvention of § 406 through use of a third party is
impermissible).  Unlike BFLLC, Bruister himself appears to be a party in interest without regard

24

(b)      Exemption of Prohibited Transactions

Even if all the Subject Transactions were prohibited, Defendants assert that they are

exempt and permissible under § 408(e).  Under that section, the prohibition found in § 406 "shall

not apply to the acquisition or sale by a plan of qualifying employer securities . . . if such

acquisition, sale, or lease is for adequate consideration . . . [,] if no commission is charged with

respect thereto, and . . . [if] the plan is an eligible individual account plan . . . ."  29 U.S.C.

§ 1108(e).  This is an affirmative defense that must be proved by the fiduciary.  *Harris v. Amgen,*

*Inc.*, 717 F.3d 1042, 1059 (9th Cir. 2013) (citing *Howard*, 100 F.3d at 1488); *accord*

*Cunningham*, 716 F.2d at 1467–68.  It is undisputed that the ESOP was an eligible plan and that

no commission was charged on the Subject Transactions.  The parties dispute, however, whether

the ESOP received adequate consideration.

"Section 408(e) has been interpreted to allow [a]n ESOP [to] acquire employer securities

in circumstances that would otherwise violate Section 406 if the purchase is made for 'adequate

consideration.'"  *Matassarin v. Lynch*, 174 F.3d 549, 567 (5th Cir. 1999) (citation and quotations

omitted).  "[I]n the case of an asset other than a security for which there is a generally recognized

market," as is the case here, ERISA defines adequate consideration as "the fair market value of

the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of

the plan and in accordance with regulations promulgated by the Secretary."  29 U.S.C.

§ 1002(18).  Although no regulations have been adopted as required by that definition, DOL has

---

to his fiduciary status because he was an officer and director of BA. § 1002(14)(H).  Plaintiffs
have not, however, sought summary judgment on the prohibited transactions and the validity of
these positions would not alter the current ruling that Defendants' motion on this point should be
denied.  The Court therefore declines to speculate on the viability of these theories at this time.

proposed regulations requiring a fiduciary to show both the payment of fair market value and that

the fair market value was determined in good faith.  Proposed Regulation Relating to the

Definition of Adequate Consideration, 53 Fed. Reg. 17,632, 17,633 (May 17, 1988) (to be

codified at 29 C.F.R. pt. 2510); *see Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618–20 (2d

Cir. 2006).  Although the regulations have never been adopted, several circuit courts of appeals

have followed them, representing the majority position.  *See Henry*, 445 F.3d at 619 (collecting

cases and noting "numerous circuit courts have adopted the DOL's proposed definition of

adequate consideration"); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 636 n.5 (7th Cir. 2005)

(explaining DOL's test found in proposed regulations is consistent with commonly employed

judicial test).  *But see Herman v. Mercantile Bank, N.A.*, 143 F.3d 419, 421 (8th Cir. 1998)

(stating prohibited transaction may be exempt absent good faith if hypothetical prudent trustee

would have nonetheless engaged in transaction).

     "The role of courts in reviewing the adequacy of consideration in an ERISA case is to

determine whether the fiduciary can show that the price paid represented a good faith

determination of the fair market value of the asset, 'not to redetermine the appropriate amount for

itself *de novo*.'"  *Henry*, 445 F.3d at 619 (quoting *Hall Holding*, 285 F.3d at 437).  "In

establishing that there has been compliance with the statutory mandate, '[t]he degree to which a

fiduciary makes an independent inquiry is critical.'"  *Keach*, 419 F.3d at 636 (quoting *Eyler v.

Comm'r of IRS*, 88 F.3d 445, 456 (7th Cir. 1996)).  And as previously discussed in the § 404

context, fiduciaries may point to an expert's guidance as evidence of a good-faith investigation.

*Bussian*, 223 F.3d at 300–01.

But fiduciaries may not blindly rely on that advice and "must 'investigate the expert's qualifications,' 'provide the expert with complete and accurate information' and 'make certain that reliance on the expert's advice is reasonably justified under the circumstances.'" *Keach*, 419 F.3d at 637 (quoting *Howard*, 100 F.3d at 1489) (additional citations omitted).  For the same reasons discussed above, the Court is not willing to rule as a matter of law whether Defendants acted in good faith to determine the fair market value for the Subject Transactions and thus whether they received adequate consideration.  This aspect of Defendants' motion is therefore denied.

### c.       Derivative-Liability Claims

Plaintiffs also assert claims that Bruister and Smith, as BA directors, breached their duty to monitor the fiduciaries and that Defendants are liable as co-fiduciaries.  Claims for breach of the duty to monitor and for co-fiduciary liability are derivative claims necessitating first some breach of fiduciary duty.  *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580–81 (S.D.N.Y. 2011).

### (1)      Duty to Monitor

Plaintiffs claim that Bruister and Smith, as members of the board of directors, had a duty to monitor the ESOP fiduciaries.  Defendants agree that ERISA creates such a duty.  Defs.' Mem. [452] at 49.  "A person or entity that has the power to appoint, retain and/or remove a plan fiduciary from his position has discretionary authority or control over the management or administration of a plan and is a fiduciary to the extent that he or it exercises that power." *In re Enron Corp.*, 284 F. Supp. 2d at 552 (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996)); *see also Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable*

*Life Assur. Soc. of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988) (citing *Leigh v. Engle*, 727 F.2d

113, 135 (7th Cir. 1984) ("The fact that Engle and Libco had only limited fiduciary

responsibilities does not mean that they had no responsibilities whatever.  As the fiduciaries

responsible for selecting and retaining their *close business associates* as plan administrators,

Engle and Libco had a duty to monitor appropriately the administrators' actions." (emphasis

added))).

     The Fifth Circuit has had few opportunities to consider an ERISA-monitoring claim of

this sort.  But earlier this year, the court noted in *Kopp* that a "claim for breach of fiduciary duty

to appoint, inform, and monitor plan fiduciaries is a derivative claim . . . ."  722 F.3d at 344

(citing *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 695 (W.D. Tex. 2008) ("To be held

responsible for a failure to monitor or as a co-fiduciary, Plaintiffs must establish an underlying

breach of fiduciary duty.")).  So if the breach-of-fiduciary-duty claims fail, then so will the

monitoring claim.  To that extent, these are both issues for trial.

     Regardless, Defendants argue that the monitoring claim fails because "[t]he duty to

monitor . . . is limited to situations where the monitoring fiduciary has 'notice of possible

misadventure by their appointees.'"  Defs.' Mem. [452] at 49 (citing *In re Enron Corp. Sec. &

ERISA Litigation*, 284 F. Supp. 2d 511, 555 (S.D. Tex. 2003) (other citations omitted)).[15]

Defendants then argue that they lacked notice as a matter of law.  But that argument seems

dubious given that Bruister and Smith appointed themselves as ESOP fiduciaries and were aware

_____

     [15]Neither party cites a Fifth Circuit opinion for this standard, and the Court is not aware of
one.  Other courts have, however, applied varying versions of a notice provision.  *See, e.g.*, *Liss
v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998) (holding that liability for failure to monitor
arises when the defendant knows or has reason to know of a breach).

of the details of each disputed transaction.  Whether Bruister and Smith were on notice of the alleged breaches by the ESOP fiduciaries—which included Smith and arguably Bruister—seems intertwined with the question whether breaches occurred, and that is an issue for trial.

Bruister also offers two arguments distinct to himself.  Unless the Court is missing the point, Bruister seems to first argue that because he abstained he was not wearing his fiduciary hat with respect to the disputed decisions and therefore cannot face liability for failing to monitor.  Defs.' Mem. [452] at 49.  That argument first fails on the question of fact regarding his actual abstention.  But beyond that, the monitoring claim is directed toward Bruister's responsibility as a BA board member with oversight for the ESOP fiduciaries, and not based on his responsibility as one of those ESOP fiduciaries.  *See Leigh*, 727 F.2d at 135 (explaining fiduciary duties of those "responsible for selecting and retaining" administrator).  He did not abstain from his responsibilities as a BA board member.

Finally, Bruister makes a different argument with respect to his abstention:  "There is no basis to expand the monitoring duties imposed on Bruister where the absence of monitoring action was intended to add weight to the abstention procedures and to ensure that the ERISA fiduciaries who acted for the ESOT were not subject to the de facto control of Mr. Bruister."  Defs.' Mem. [452] at 50.  There is no authority offered for this argument.  But assuming the argument is legally correct, it rests on the same question of fact.  Regardless, the proposition might have more appeal had Bruister actually distanced himself from the discussions.  Though a question remains whether he abstained from the ultimate decisions, the record is undisputed that Bruister was physically present during relevant discussions and had conversations with BA lawyer David Johanson and Donnelly regarding the ESOP.  Summary judgment is denied.

(2)     Co-Fiduciary Liability

Unlike the duty to monitor, ERISA contains an express provision creating co-fiduciary

liability.  29 U.S.C. § 1105.  Under that section,

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary
> responsibility of another fiduciary with respect to the same plan in the following
> circumstances:
>
> > (1) if he participates knowingly in, or knowingly undertakes to
> > conceal, an act or omission of such other fiduciary, knowing such
> > act or omission is a breach;
> >
> > (2) if, by his failure to comply with section 1104(a)(1) of this title
> > in the administration of his specific responsibilities which give rise
> > to his status as a fiduciary, he has enabled such other fiduciary to
> > commit a breach; or
> >
> > (3) if he has knowledge of a breach by such other fiduciary, unless
> > he makes reasonable efforts under the circumstances to remedy the
> > breach.

*Id.* § 1105(a).  But the only basis for dismissal asserted by Defendants is that Bruister was not

acting as a fiduciary and thus is not liable as a co-fiduciary.[16]  The Court has already recognized

that factual disputes foreclose that argument, and consistent with that finding Defendants' motion

is denied with respect to the co-fiduciary claims.

3.     Remedies

a.     Damages Against Bruister

Defendants assert that Bruister cannot be personally liable under § 409 of ERISA unless

he was acting as a fiduciary with respect to the alleged breaches.  Having found a question of fact

---

[16]Defendants apparently have not sought dismissal of the co-fiduciary claims against
Smith and Henry independent of previously asserted arguments that those defendants did not
breach their fiduciary duties.

whether Bruister was acting in a fiduciary capacity with respect to the Subject Transactions, the Court finds that this aspect of Defendants' motion should be denied.

b.      Equitable Relief under § 502(a)(3)

Defendants assert that Plaintiffs cannot recover under § 502(a)(3) because the actual amount BFLLC received from the Subject Transactions is less than the fair market value supposedly identified by Plaintiffs' expert Z. Christopher Mercer.  Defs.' Mem. [452] at 51–54. Plaintiffs never responded to this argument.

Normally the failure to respond would be viewed as a waiver and the Court would grant the motion as unopposed.  But the Secretary of Labor responded to this same argument in the companion case.  Because both cases pursue the same relief for the same ESOP, granting Defendants' motion as unopposed would not resolve the issue.  The Court will therefore incorporate its analysis from the companion case where the arguments of both sides have been more fully presented.  For the reasons stated in that Order, Defendants' motion is denied.

B.      *Daubert* Motions

As to the three *Daubert* motions, the Court notes that the matter is set for a bench trial. The Fifth Circuit has made clear that "the importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. C.I.Ri*, 615 F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)); *see also Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2008 WL 1930681, at *2 (E.D La. Apr. 29, 2008) (collecting cases).  Because the Court wishes to hear the experts before

deciding the admissibility of their testimony, the Court denies the motions without prejudice. The parties may challenge the experts at trial.

However, the Court will address to some extent the objection as to Defendants' expert Jared Kaplan [436].  As Defendants correctly point out in their response to Plaintiffs' motion challenging Kaplan's testimony, the Court in the companion case brought by the Secretary of Labor held that Kaplan will be permitted to testify.  Order [210] Jan. 20, 2012, *Harris v. Bruister*, No. 4:10-cv-77-DPJ-FKB.  However, the Court made clear that Kaplan would not be permitted to "offer legal opinions that simply state that the Defendants met their fiduciary duties."  *Id.* at 2 (citing *Askanase v. Fajito*, 130 F.3d 657, 674 (5th Cir. 1997); *Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999)).  The Court persists in its ruling that Kaplan will not be permitted to offer legal conclusions.  *See United States v. Daggs*, 448 F. App'x 504, 507 (5th Cir. 2011) ("Rule 704(a) does not allow a witness to give legal conclusions." (internal quotation marks and citations omitted)).  It is impossible to know, at this time, the point at which Kaplan's testimony crosses from permissible expert opinions into the realm of inadmissible legal opinions, and the Court must hear and assess the evidence before drawing that line.  The Court will address the issue further at trial.

III.    Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, all of the pending motions [427, 429, 436, 445, 448, 450] are denied without prejudice to the parties re-urging some of the arguments at trial as outlined in the order.

**SO ORDERED AND ADJUDGED** this the 20th day of December, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE